CADES SCHUTTE
A Limited Liability Law Partnership

JEFFREY S. PORTNOY        1211-0
DANA A. BARBATA            9112-0
Cades Schutte Building
1000 Bishop Street, Suite 1200
Honolulu, HI  96813-4212
Telephone:  (808) 521-9200
Fax:  (808) 521-9210
Email:  jportnoy@cades.com

Attorneys for Defendant
ORRICK HERRINGTON & SUTCLIFFE
LLP

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BROADBAND ITV, INC.,<br><br>                    Plaintiff,<br><br>     v.<br><br>ORRICK HERRINGTON &<br>SUTCLIFFE LLP,<br><br>                    Defendant. | CIVIL NO. _____<br><br>**DEFENDANT ORRICK HERRINGTON & SUTCLIFFE LLP'S NOTICE OF REMOVAL; DECLARATION OF ROBERT S. SHWARTS; EXHIBIT "1"; CERTIFICATE OF SERVICE** |

## DEFENDANT ORRICK HERRINGTON
## & SUTCLIFFE LLP'S NOTICE OF REMOVAL

Defendant ORRICK HERRINGTON & SUTCLIFFE LLP ("**Defendant"**)

gives notice of removal of this action from the Circuit Court of the First Circuit,

State of Hawaiʻi ("**Circuit Court"**) to the United States District Court for the

District of Hawaiʻi.   Removal is proper because this action satisfies the

jurisdictional requirements of 28 U.S.C. §§ 1332(a), 1441, and 1446; and because

Defendant has satisfied the procedural requirements for removal.  In support of its Notice of Removal, Defendant states:

1. **State Court Action**

Plaintiff Broadband ITV, Inc ("**Plaintiff**") filed a Complaint; Demand for Jury Trial; Summons (the "**Complaint**") in Circuit Court against Defendant on February 5, 2020. *See* Ex. 1.   Defendant was emailed a copy of the Complaint on February 5, 2020.  Declaration of Robert S. Shwarts ("Shwarts Dec.").

2. **Grounds for Removal**

This action is removable under 28 U.S.C. § 1441(a); venue appears to be proper in the District of Hawai'i; and this Notice of Removal is timely filed. Grounds for removal are that amount in controversy exceeds the minimum of $75,000 and there is complete diversity of citizenship as required by 28 U.S.C. 1332(a)

3. **This Court's Original Jurisdiction**

Under 28 U.S.C. § 1441(a), "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

Under 28 U.S.C. § 1332(a)(2) ("**diversity jurisdiction**"), the district courts of the United States have original jurisdiction over all civil actions where the

matter in controversy exceeds the sum or value of $75,000 and is between "citizens of a State and citizens or subjects of a foreign state." Both requirements are met here.

### a.   Diversity of citizenship.

For purposes of 28 U.S.C. §§ 1441 and 1332, "a corporation shall be deemed to be a citizen of every State and foreign state by which it has been incorporated and of the State or foreign state where it has its principal place of business[.]" 28 U.S.C. § 1332(c)(1). A corporation's "principal place of business" is "usually its main headquarters," "where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp v. Friend*, 559 U.S. 77, 92-94 (2010). In terms of a limited liability partnership, diversity is determined by the citizenship of the partners. *Carden v. Arkoma Assocs*. 494 U.S. 185, 108 (1990).

According to the allegations contained in the Complaint, Plaintiff is a Delaware corporation with its principle place of business in Honolulu, Hawaii. See Complaint at ¶ 14.   Defendant is a California limited liability partnership doing business in multiple states.   See Complaint at ¶ 15.   None of Defendant's current partners are citizens of Hawaii or Delaware.   *Id*.

Accordingly, Plaintiff and Defendant are diverse within the meaning of 28 U.S.C. § 1332(a).

**b.** **Amount in controversy.**

The amount in controversy exceeds the $75,000 threshold set forth in 28 U.S.C. § 1332(a). In the Complaint, Plaintiff alleges one count against Defendant for breach of duty of loyalty, seeking general, special, and treble and/or punitive damages for the "tens of millions in lost royalties". See Complaint at ¶¶ 13, 58, 81-91 and the prayer for relief.

Accordingly, the amount in controversy is greater than $75,000, satisfying the requirement of 28 U.S.C. § 1332(a).

Because the present action satisfies all jurisdictional prerequisites of 28 U.S.C. § 1332(a), this Court has original jurisdiction.

**4.** **Procedural Requirements for Removal**

Defendant files this Notice of Removal pursuant to 28 U.S.C. § 1446. No previous application has been made for the relief requested herein.

**5.** **Venue**

The United States District Court for the District of Hawai‘i embraces the county in which the state court action is now pending, and thus, this Court is the proper district court to which this case should be removed, See 28 U.S.C. §§ 144l(a) and 1446(a). However, Defendant reserves the right to seek the transfer of venue should facts indicate another venue is more appropriate pursuant to 28 U.S.C. § 1404(a).

### 6.   Timeliness of Notice of Removal

Pursuant to 28 U.S.C. § 1446(b), this removal is timely because 30 days have not elapsed since February 5, 2020, which is the date that the email containing the initial pleading was received by Defendant.

### 7.   State Court Pleadings

As 28 U.S.C. § 1446(a) requires, Defendant attaches here as Exhibit 1, respectively, the "Summary of Documents to be Served," the Complaint, "Demand for Jury Trial," and Summons.  Exhibit 1 constitutes all process, pleadings, and orders that have been received by Defendant.

### 8.   Notice to Adverse Parties and State Court

Pursuant to 28 U.S.C. § 1446(d), Defendant is providing written notice to Plaintiff and shall file a true and correct copy of this Notice of Removal with the Clerk of the Circuit Court.

In filing this Notice of Removal, Defendant does not waive any defense, exception, right, or motion. Defendant specifically reserves all defenses, exceptions, rights, and motions. This reservation includes but is not limited to defenses for lack of personal jurisdiction and insufficient service of process and the right to seek the transfer of venue. No statement or omission here shall be deemed to constitute an admission by Defendant of any of the allegations or damages sought in the Complaint.

WHEREFORE, Defendant respectfully removes this action from the Circuit Court of the First Circuit, State of Hawai'i to the United States District Court for the District of Hawai'i.

DATED:  Honolulu, Hawai'i, February 27, 2020.

CADES SCHUTTE
A Limited Liability Law Partnership

*/s/ Dana A. Barbata*
JEFFREY S. PORTNOY
DANA A. BARBATA
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAI'I

| | |
|---|---|
| BROADBAND ITV, INC., | CIVIL NO. _____ |
| Plaintiff, | **DECLARATION OF** |
| v. | **ROBERT S. SHWARTS** |
| ORRICK HERRINGTON & SUTCLIFFE LLP, | |
| Defendant. | |

## **DECLARATION OF ROBERT S. SHWARTS**

I, ROBERT S. SHWARTS, declare as follows:

1.      I am a partner with the law firm ORRICK HERRINGTON & SUTCLIFFE LLP ("**Orrick**") who is the Defendant in the above-titled action, and am authorized and competent to make this declaration based on personal knowledge.

2.      Attached to the Notice of Removal as Exhibit "1" is a true and correct copy of the Complaint I received via email on February 5, 2020.

3.      Orrick is a California limited liability partnership.

4.      None of my partners are currently citizens of Hawaii or Delaware.

//

//

I declare, verify, certify, and state under penalty of perjury that the foregoing is true and correct.

Executed at San Francisco, California, on February 26, 2020.

ROBERT S. SHWARTS

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAII

| | |
|---|---|
| BROADBAND ITV, INC.,<br><br>                    Plaintiff,<br><br>        v.<br><br>ORRICK HERRINGTON &<br>SUTCLIFFE LLP,<br><br>                    Defendant. | CIVIL NO. 1CCV-20-0000177<br>(Other Non-Vehicle Tort)<br><br>**CERTIFICATE OF SERVICE** |

## <u>CERTIFICATE OF SERVICE</u>

The undersigned hereby certifies that on this date a copy of the foregoing

document was duly served on the following listed below via the Court's Judiciary

Electronic Filing System (JEFS):

> MARGERY S. BRONSTER, ESQ.
> REX Y. FUJICHAKU, ESQ.
> MATTHEW J. TERRY, ESQ.
> Bronster Fujichaku Robbins
> 1003 Bishop Street, Suite 2300
> Honolulu, Hawaii  96813
>
> Attorneys for Plaintiff
> BROADBAND ITV, INC.

DATED:  Honolulu, Hawai'i, February 27, 2020.

> CADES SCHUTTE
> A Limited Liability Law Partnership
>
> */s/ Dana A. Barbata*
> —————————————————————
> JEFFREY S. PORTNOY
> DANA A. BARBATA
> Attorneys for Defendants

# EXHIBIT "1"

BRONSTER FUJICHAKU ROBBINS
A Law Corporation

MARGERY S. BRONSTER        # 4750
REX Y. FUJICHAKU           # 7198
MATTHEW J. TERRY           #10361
1003 Bishop Street, Suite 2300
Honolulu, Hawai'i 96813
Telephone:  (808) 524-5644

Attorneys for Plaintiff
BROADBAND ITV, INC

**Electronically Filed
FIRST CIRCUIT
1CCV-20-0000177
05-FEB-2020
10:00 AM**

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| BROADBAND ITV, INC.,<br><br>                    Plaintiff,<br><br>      v.<br><br>ORRICK HERRINGTON & SUTCLIFFE LLP,<br><br>                    Defendant. | Civil No._____<br> (Other Non-Vehicle Tort)<br><br>COMPLAINT; DEMAND FOR JURY TRIAL; SUMMONS |

## COMPLAINT

Plaintiff BROADBAND ITV, INC. ("Plaintiff" or "BBiTV"), hereby files its

Complaint against the above-named Defendant, and alleges and avers as follows:

## INTRODUCTION

1.     This case involves counsel's breach of fiduciary duties to the client by becoming

adverse to the client in litigation on the very same contract on which it earlier advised the client.

2.     Plaintiff BBiTV relied on Defendant ORRICK HERRINGTON & SUTCLIFFE

LLP ("Orrick") as its principal outside counsel for a host of corporate matters during a critical

period in 2005-2006 when BBiTV was financially struggling.

I do hereby certify that the foregoing is a full, true and correct copy of the official court record of the Courts of the State of Hawai`i.
Dated at: Honolulu, Hawai`i 05-FEB-2020, /s/ Lori Ann Okita, Clerk of the First Judicial Circuit, State of Hawai`i



3.      Orrick has prided itself as a premier law firm catering to the legal needs of fledgling technology start-ups such as BBiTV.  On its website, Orrick boasts that "we offer comprehensive solutions for every stage in a tech company's growth – including private and public company transactions, IP protection, high-stakes litigation, and cybersecurity and other compliance."  In being recognized as the "Technology Group of the Year" in 2019, Orrick highlighted "the firm's ability to bring its best lawyers to help companies even at the early stage of development [as] among the reasons why startups are drawn to the firm[.]"

4.      Starting in mid-2005, Orrick began advising BBiTV on a wide range of general corporate matters, including capital fundraising, contract negotiations, and labor and employment issues.  Orrick's attorneys participated in numerous BBiTV board meetings, where the company's most intimate and confidential matters were discussed openly.  Orrick was BBiTV's de facto "outside inside general counsel" during this period.

5.      In mid-2006, Plaintiff BBiTV asked its lawyers at Orrick to advise it on a crucial license agreement that BBiTV was negotiating with OpenTV, Inc. ("OpenTV").  OpenTV was a provider of software for cable, satellite and interactive television technology.  BBiTV and OpenTV had a prior relationship.  BBiTV sought to enter into the license agreement with OpenTV to monetize its cutting-edge technologies as part of its strategy to reorganize, shift business strategies, and overcome its financial struggles.

6.      The License Agreement was a significant undertaking for BBiTV.  BBiTV was proposing to license to OpenTV all its patents, technologies described in all its patents and patent applications, and all other the intellectual property that BBiTV had or would ever have.  The goal of BBiTV in granting such a broad license was to collect royalties from OpenTV whenever OpenTV earned revenues from products using the licensed technologies.

7.      Orrick attorneys, including Brian Burr, Gerry Murfitt, Glen Van Ligten, and Marc Levinson, were the experts that BBiTV asked for advice, and who provided advice to BBiTV. The advice requested, and the advice given, was comprehensive.  BBiTV expected Orrick and its attorneys to review the draft license agreement with OpenTV, advise BBiTV on the language of the draft agreement, raise any issues that could be harmful to BBiTV's interests and suggest edits to address those issues.  Orrick did so, and BBiTV relied on Orrick's advice.

8.      In the course of Orrick's representation, BBiTV had privileged discussions orally and in writing with the Orrick attorneys and provided them confidential information about BBiTV's business, its relationship with OpenTV, and its goals regarding the License Agreement. BBiTV trusted that Orrick would preserve the confidentiality of these communications and, consistent with Orrick's ethical duties, would never misuse this information to BBiTV's detriment, even after the formal attorney-client engagement ceased.

9.      Based on Orrick's advice, BBiTV signed the License Agreement with OpenTV. BBiTV gave OpenTV full access to its technology and intellectual property pursuant to the License Agreement.  However, in the years that followed, OpenTV violated the terms of the License Agreement by failing to pay BBiTV any royalties based on the use of BBiTV's licensed technologies.

10.     BBiTV ended up suing OpenTV in an ongoing action in California state court for breach of the License Agreement for not paying up to $100 million in royalties due under the License Agreement.  Orrick then appeared in that case, ***as counsel for OpenTV***.

11.     In defending OpenTV against BBiTV, Orrick is arguing that the License Agreement should be interpreted to bar BBiTV's claims. The License Agreement was the very

agreement on which Orrick advised BBiTV. And, while doing so, Orrick was privy to BBiTV's confidential information.

12.     One of the arguments Orrick raised against BBiTV (which has yet to be decided by the California court) is that a Limitation of Liability Provision in the License Agreement prohibits BBiTV from collecting *any* past due royalties if OpenTV had not previously paid any royalties.  Orrick's argument, if successful, effectively allows OpenTV to use BBiTV's licensed technologies and intellectual property without payment, which would be catastrophic to BBiTV.

13.     By representing OpenTV in litigation against BBiTV and advocating an interpretation of the License Agreement which is completely hostile to BBiTV, Orrick has breached (and continues to breach) its fiduciary duties of loyalty to BBiTV.  Orrick has a duty to refrain from switching sides and representing a party adverse to BBiTV regarding the License Agreement (or any other matter on which Orrick advised or represented BBiTV).  An adverse judgment in the California action, caused by Orrick's breach of fiduciary duty by representing OpenTV, will result in tens of millions in lost royalties for which Orrick will be to blame and must be held responsible for such legal malpractice.

## PARTIES

14.     Plaintiff Broadband iTV, Inc. is a Delaware corporation, with its principle place of business in Honolulu, Hawai`i.

15.     Defendant Orrick Herrington & Sutcliffe LLP is a California limited liability partnership, doing business in multiple states of the United States as well internationally in offices in multiple countries around the world.  Orrick's attorneys have represented clients in the courts located in the state of Hawai'i, and has been bond counsel for numerous bond offerings on

behalf of the State of Hawai'i, the City and County of Honolulu, the Honolulu Board of Water Supply, and the University of Hawai'i.

## JURISDICTION AND VENUE

16.     The Court has jurisdiction over this matter pursuant to Haw. Rev. Stat. § 603-21.5 and § 634-35.

17.     Venue is proper in this Circuit pursuant to Haw. Rev. Stat. § 603-36 as the circuit where the claim for relief arose.

## FACTUAL BACKGROUND

### A.     BBiTV Background

18.     In or about 2001, BBiTV was formed in Honolulu, Hawai'i by a group of local investors for the purpose of developing interactive media services and applications.  Since its formation, BBiTV has focused on developing novel and innovative technologies for delivering video on demand programs to television subscribers though traditional broadband connections as well as internet protocol television ("IPTV").

19.     BBiTV has been a pioneer in the development of innovative interactive television ("iTV") and video-on-demand ("VOD") content management and delivery applications.  BBiTV technology relates to VOD applications which can include on-demand movies, documentaries, historic sports events, TV programs, infomercials, advertisements, music videos, short-subjects, and even individual screen displays of information.  BBiTV's technology also includes VOD-based interactive television services that generally allow a viewer to use the remote control to navigate through an on-screen menu and select from a variety of titles for stored video programs for individual viewing on demand.

20.     BBiTV initially launched original applications on Oceanic Time Warner Cable, including "Promo!," the nation's first interactive cable channel dedicated to long-form advertising videos, including local and national products and services, and "TVClassifieds," a first-of-its-kind interactive web-to-cable television classified ads platform that allowed users to create classified video ads on television using web-based templates and content management.

21.     On July 30, 2004, an employee of BBiTV caused to be filed with the U.S. Patent and Trademark Office on behalf of BBiTV, United States Patent Application No. 10/909,192 ("the '192 application").  In connection with the application process, the inventor assigned his interest in the '192 application and all divisionals, continuations, substitutes, renewals, reissues, and reexaminations thereof and any patents that issued therefrom to BBiTV.  On September 15, 2009, the USPTO duly and legally issued United States Patent No. 7,590,997 ("the '997 patent").

22.     BBiTV's patent portfolio has grown to include over 50 active U.S. patents (with additional patents pending), active foreign patents, and numerous U.S. and foreign patent applications.

**B.     BBiTV Undergoes a Restructuring in 2005-2006**

23.     In 2005-2006, BBiTV's business was struggling financially.  BBiTV 's Board of Directors decided to shift BBiTV's focus to developing and maintaining its intellectual property assets rather than developing its own products for the market.

24.     BBiTV retained Orrick in 2005 to advise it on a number of issues when attorney Glen Van Ligten joined Orrick in May 2005.  BBiTV had previously retained Mr. Van Ligten as counsel on corporate and financing issues.

25.     An engagement agreement executed in May 2005 between Orrick and BBiTV reflects that Orrick would provide general corporate representation to BBiTV.

C.    **In 2005-2006, Orrick Serves as BBiTV's "Outside Inside General Counsel"**

26.    For over a year during 2005 and 2006, BBiTV retained Orrick as corporate counsel to assist with fundraising, labor and employment issues, contract negotiations, and other corporate matters.  The fundraising issues included the solicitation, negotiation, and consummation of investments from investors primarily from the state of Hawai`i.

27.    As evidenced by the attendance of at least one—and sometimes three—Orrick attorneys at nearly every BBiTV board meeting between May 2005 and June 2006, Orrick was effectively BBiTV's "outside inside counsel" during the period in which the June 12, 2006 License Agreement was negotiated, drafted and executed.  At many of these board meetings, issues regarding BBiTV's business relationship with OpenTV were discussed.  The following is a list of BBiTV board meetings during the year leading up to execution of the License Agreement:

      **a.**    **May 26, 2005:**

            i)    Orrick attorneys present: John Dugan

      **b.**    **June 22, 2005**

            i)    OpenTV Sales Strategy discussed

            ii)    Orrick attorneys present: Glen Van Ligten

      **c.**    **July 20, 2005**

            i)    Agenda Items: "OpenTV Sales Strategy" and "OpenTV Right of First Refusal"

            ii)    Orrick attorneys present: Glen Van Ligten and John Dugan

      **d.**    **August 24, 2005**

            i)    Agenda Items: OpenTV investment in BBiTV, and OpenTV Sales

            ii)    Orrick attorneys invited: Glen Van Ligten

    **e.**    **September 28, 2005**

        i)    Orrick attorneys present: Glen Van Ligten

    **f.**    **October 12, 2005**

        i)    Orrick attorneys present: Glen Van Ligten

    **g.**    **November 16, 2005**

        i)    Orrick attorneys present: Gerry Murfitt

    **h.**    **November 28, 2005**

        i)    Orrick attorneys invited: Glen Van Ligten

    **i.**    **December 16, 2005**

        i)    Orrick attorneys present: Gerry Murfitt

    **j.**    **December 21, 2005**

        i)    Orrick attorneys present: Glen Van Ligten, Marc Levinson and Gerry Murfitt

    **k.**    **December 29, 2005**

        i)    Orrick attorneys invited: Glen Van Ligten

    **l.**    **February 21, 2006**

        i)    Orrick attorneys present: Gerry Murfitt

    **m.**    **March 22, 2006**

        i)    Minutes entry: "Strategic Sale of Assets" to OpenTV

        ii)    Orrick attorneys present: Gerry Murfitt and Marc Levinson

    **n.**    **March 29, 2006**

        i)    Agenda Item: "Strategic Sale or License … Proposal to OpenTV"

        ii)    Orrick attorneys present: Gerry Murfitt

    **o.**    **April 4, 2006**

        i)    Agenda item: "Strategic Sale . . . OpenTV"

        ii)    Orrick attorneys invited: Gerry Murfitt

      **p.**    **April 10, 2006**

          i)     Agenda item: "OpenTV . . . Possible License Arrangement

Levinson

          ii)    Orrick attorneys present: Glen Van Ligten, Gerry Murfitt and Marc

      **q.**    **April 18, 2006**

          i)     Agenda item: "OpenTV License Arrangement—Status"

          ii)    Orrick attorneys present: Gerry Murfitt and Marc Levinson

      **r.**    **April 27, 2006**

          i)     Agenda item: "License Opportunities . . . OpenTV"

          ii)    Orrick attorneys present: Gerry Murfitt

      **s.**    **May 5, 2006**

          i)     Orrick attorneys invited: Gerry Murfitt

      **t.**    **May 11, 2006**

          i)     Agenda items: "OpenTV License Agreement Status"

          ii)    Orrick attorneys present: Gerry Murfitt

      **u.**    **May 23, 2006**

          i)     Agenda item: "OpenTV License Agreement Status"

          ii)    Orrick attorneys invited: Gerry Murfitt

      **v.**    **May 30, 2006**

          i)     Agenda item: "OpenTV License Agreement Terms"

          ii)    Orrick attorneys invited: Gerry Murfitt

28.    The location of each of these board meetings was the BBiTV offices, then located at 810 Richards Street in Honolulu, Hawai`i.  Some participants, including the Orrick lawyers, were able to attend by telephone.

29.     The amount of privileged and confidential litigation about BBiTV's business, strategy, and intellectual property that Orrick was provided in these board meetings and in other communications is expansive.  Orrick had access to virtually all of BBiTV's confidential information.

D.      **BBiTV Enters Into a License Agreement with OpenTV**

30.     Historically, BBiTV and OpenTV enjoyed a close relationship, especially after BBiTV's former president, Tim Evard, became a Senior Vice President at OpenTV in 2005.

31.     At that time, collaboration between BBiTV and OpenTV made practical and business sense.  OpenTV was a provider of set-top box "middleware" for cable, satellite and interactive television.  BBiTV had developed novel iTV products, including technology that enabled businesses, individuals, and others to deliver local content and advertising.  BBiTV's products were thus a complement to what OpenTV was doing.

32.     In 2004, BBiTV and OpenTV entered into a distribution agreement, whereby OpenTV received exclusive worldwide marketing and distribution rights with respect to certain BBiTV products.  In consideration of OpenTV's services, BBiTV agreed to pay OpenTV a fifteen percent (15%) commission of BBiTV's gross revenues.  The distribution agreement was a success, and the parties continued to undertake collaborative efforts together.

33.     Around 2005, OpenTV expressed an interest BBiTV's novel and then cutting-edge VOD technologies. These technologies included the provision of video-on-demand via hierarchical, linked and templatized menus.  Although hierarchical, templated VOD is widespread today, in 2005 and 2006 it was not yet available to consumers.  BBiTV was at the forefront, and OpenTV wanted a head start into this promising young market.

34.     OpenTV was also an early equity investor in BBiTV and OpenTV was a major stockholder.  At the time the License Agreement was entered into, there was also discussion of OpenTV simply buying BBiTV.

35.     Orrick, through Glen Van Lighten, was well aware of this history between OpenTV and BBiTV.  Prior to joining Orrick in May 2005, Mr. Van Lighten advised BBiTV in various corporate matters and was aware of and involved in the discussions concerning OpenTV.

36.     At the time the License Agreement was entered into in 2006, OpenTV was a natural licensing partner for BBiTV given that OpenTV was already a global leader in the interactive television market.  OpenTV was very interested in expanding into the video on demand market.  BBiTV had the technology and know-how, cutting edge at the time, to give OpenTV a substantial head-start in developing video-on-demand products.

37.     BBiTV and OpenTV thereby entered into the License Agreement with an effective date of June 12, 2006 to govern the licensing of certain BBiTV technologies and software.  In general, the License Agreement provides that BBiTV would license OpenTV all of its intellectual property related to the technologies in the License Agreement on a worldwide, non-exclusive basis.  In exchange, OpenTV would pay BBiTV a fixed percentage royalty of all revenues OpenTV or its Affiliates (as defined in the License Agreement) received that were attributable to the licensed Intellectual Property and technologies. The term of the agreement is in perpetuity, or until terminated by a non-defaulting party on account of the other party's default.

38.     The Licensed Software is not limited to patented inventions or the specific Source Code delivered to OpenTV, but also broadly includes, at OpenTV's insistence during negotiations, "technologies described" (whether patentable or not) in BBiTV's '192 patent

application as well as any future patents and patent applications.  That is, OpenTV agreed to pay BBiTV not only for specific source code or to use specific patents, but also for the right to utilize BBiTV's VOD technologies broadly, whether patented or not, and as further developed after the Effective Date of the License Agreement.

<strong>E.</strong>   <strong><u>Defendant Advised BBiTV on the License Agreement</u></strong>

39.    From March through June 2006, a multi-disciplinary team of lawyers at Orrick advised BBiTV extensively on a transaction with OpenTV, which eventually led to the License Agreement.  This team included Glen Van Lighten and Gerry Murfitt, who are both corporate and securities lawyers.  Because the License Agreement involved intellectual property, the Orrick team included Brian Burr, then the head of Orrick's technology transactions practice in San Francisco and Silicon Valley.  Mr. Burr claimed expertise and experience on technology licensing.  The team also included attorney Marc Levinson, a specialist in bankruptcy and restructuring.

40.    The diverse expertise of the Orrick team that reviewed the License Agreement reflects the integral role Orrick was asked to play on this important contract and the broad spectrum of advice Orrick was asked to provide, and did indeed provide, on the License Agreement.  The large and diverse team Orrick employed also reflects the extent of confidential information it received on all aspects of the License Agreement and the business relationship with OpenTV.

41.    After weeks of preliminary discussions, OpenTV proposed the initial draft of the License Agreement to BBiTV on May 25, 2006, which was entitled a "Source Code License and Binary Distribution Agreement."  BBiTV almost immediately sought Orrick's advice on the agreement.  Orrick provided advice to BBiTV on multiple occasions between May 25, 2006 and

12

June 12, 2006, the date the agreement was executed.  Orrick's advice included oral advice at board meetings and Mr. Burr sending a redline draft of the agreement on May 30, 2006 with detailed revisions to multiple portions of the agreement.

42.     Orrick responded to additional questions about the agreement and its exhibits right up until June 12, 2006.  Mr. Murfitt responded specifically to multiple questions.  Mr. Van Ligten was the head of the engagement between BBiTV and Orrick, and he was on most of the e-mails providing BBiTV with advice regarding the License Agreement.

43.     BBiTV expected Orrick to advise it on all aspects of the License Agreement.  Orrick accepted that responsibility.  Indeed, that is one reason why Brian Burr was called in to advise BBiTV.  Unlike attorneys Gerry Murfitt and Glen Van Ligten, who advised BBiTV on a broad variety of issues, attorneys Murfitt and Van Ligten brought on Mr. Burr specifically because of his expertise at intellectual property licenses.  Mr. Burr was expected to, and did, advise on every aspect of the License Agreement.

44.     The breadth of Orrick's engagement with respect to OpenTV on the License Agreement is consistent with the breadth of their engagement on OpenTV issues in general.  Mr. Van Ligten and Mr. Murfitt had previously advised BBiTV on other agreements involving OpenTV, including an agreement with OpenTV involving OpenTV's right of first refusal investment rights with BBiTV.  Indeed, Orrick even drafted an agreement between OpenTV and BBiTV on that issue in late 2005.  Mr. Van Ligten also advised BBiTV extensively on its 2004 Distribution Agreement with OpenTV.

45.     According to Orrick's billing records, Orrick attorneys spent many hours advising BBiTV on the License Agreement.  This does not include time Orrick attorneys spent at BBiTV board meetings where the License Agreement was a topic of sometimes extensive discussion.

**F.**     **OpenTV Breaches the License Agreement and BBiTV Files Suit Against It**

46.     The License Agreement provides that for any calendar quarter in which Net Licensed Software Revenue is received by OpenTV (or its Affiliates), OpenTV shall deliver BBiTV a report containing such supporting information as is reasonably necessary for BBiTV to calculate the amount of the Revenue Share (i.e. royalties) owed to BBiTV.

47.     Since the execution of the License Agreement in 2006, OpenTV has not provided BBiTV with any reports.

48.     In 2011, BBiTV reached out to OpenTV to ask whether there were any royalties due under the License Agreement or if OpenTV was using or planning to use Licensed Software. The discussions occurred over both e-mail and in-person meetings.  OpenTV told BBiTV that no royalties were owed and that it was not selling royalty-bearing products.

49.     At no time afterwards did OpenTV ever tell BBiTV that it was selling royalty-bearing products, as the License Agreement requires it to do.

50.     In 2016, BBiTV was alerted to the fact that in Brazil and perhaps elsewhere, OpenTV had deployed products utilizing the "technology described" in BBiTV's patent applications—i.e., technology that was part of the Licensed Software.

51.     In particular, OpenTV's "OpenTV 5 Suite" middleware contains Object Code, as that term is defined in the License Agreement.  Upon information and belief, OpenTV 5 Suite contains many of the technologies described in the '192 Patent Application, as well as technologies described in extensions to the application.  OpenTV is thus using the Licensed Software.

52.     OpenTV is a fully-owned subsidiary of the Swiss-based Kudelski Group, and has a number of Affiliates (as defined in the License Agreement) within the Kudelski Group.  Upon

14

information and belief, OpenTV has also provided Object Code, embedded in the OpenTV 5 Suite, to its Affiliates (as defined in the License Agreement), all members of the Kudelski Group, for distribution to various markets.

53.     Upon information and belief, these Affiliates derive revenue attributable to the Licensed Software that BBiTV licensed to OpenTV and which OpenTV in turn sublicensed to these Affiliates, including at least the Object Code embedded in the OpenTV 5 Suite.  BBiTV is entitled to, and OpenTV is obligated to pay, royalties on these revenues under the License Agreement.

54.     BBiTV sent OpenTV a letter on August 3, 2016 requesting a report sufficient to identify the Net Licensed Software Revenue earned by OpenTV over the past three years, as required by Section 3.2 of the License Agreement.  OpenTV refused.

55.     BBiTV then retained KPMG to conduct an audit in 2016 for purposes of confirming royalty payments pursuant to the License Agreement.  OpenTV refused to provide key information regarding relevant and important matters, including, for example, information on OpenTV's products beyond those directly based on the Source Code delivered to OpenTV, as well as information regarding use of the Licensed Software by OpenTV Affiliates.

56.     With all other options exhausted due to OpenTV's bad faith, BBiTV filed suit against OpenTV on October 17, 2017 in the Superior Court of California, County of San Francisco, Case No. CGC-17-561922 (the "California Case").

57.     In the California Case, BBiTV asserts claims against OpenTV for (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; (3) Declaratory Relief (4) Unjust Enrichment; and (5) an Accounting.  BBiTV seeks, *inter alia*, the unpaid royalties due to it from OpenTV under the License Agreement.

58.     OpenTV and its Affiliates have resisted discovery tooth and nail in the California Case, and BBiTV has not been able to estimate royalties owed to it.  Based on the limited information available to date, BBiTV believes the unpaid royalties to be conservatively in the tens of millions of dollars and quite possibly over $100 million.

**G.     Orrick Substitutes in as Counsel for OpenTV in the California Case**

59.     The law firm K&L Gates LLP originally represented BBiTV in the California Case.

60.     In early September 2018, Orrick substituted in as counsel for K&L Gates.  Orrick did not seek or otherwise obtain BBiTV's consent to represent OpenTV against it in the California Case.  Indeed, Orrick did not even notify BBiTV of the conflict.

61.     On October 29, 2018, BBiTV demanded Orrick withdraw as counsel given its prior representation of BBiTV in connection with the formation and negotiation of the License Agreement.  After receiving this demand, rather than contact BBiTV's attorneys to discuss the matter, Orrick immediately filed a motion to compel on behalf of OpenTV seeking information related to the formation and interpretation of the License Agreement which, in Orrick's own words, is at the "heart of this case."

62.     On October 31, 2018, Orrick's letter responding to BBiTV's request for withdrawal confirmed that "[y]ou are correct that Orrick represented Broadband iTV in 2005-2006."  Thus, prior to agreeing to represent OpenTV in the California litigation, Orrick knew or should have known of its prior representation of BBiTV, and yet failed to address this issue with or even notify BBiTV.  Nevertheless, Orrick rejected BBiTV's demand that Orrick withdraw as OpenTV's counsel.

63.     Orrick also admitted that attorney Marc Levinson, who is still with Orrick, had been involved in advising BBiTV.  Orrick's website reflects that Mr. Levinson remains Senior Counsel with Orrick and specializes in advising in insolvency planning and acquiring assets from insolvent companies.  Orrick insisted, however, that Mr. Levinson consulted with BBiTV only concerning BBiTV's financial condition in 2006, and not the License Agreement.

64.     Orrick's portrayal of Mr. Levinson's role in advising BBiTV was inaccurate.  The board minutes reflect Mr. Levinson's participation in BBiTV board meetings in March and April 2006 where potential "Strategic Sale of Assets" to OpenTV and "OpenTV License Arrangement—Status" were discussed. Orrick also admitted in the California Case that Mr. Levinson spent two hours advising BBiTV on the License Agreement.

65.     Moreover, Mr. Levinson was included in multiple email communications between Orrick and BBiTV in connection with the drafting, reviewing and revising of the License Agreement.  In particular, in one of the emails dated May 26, 2006 from Glenn Yamashita, BBiTV's then-chief financial officer, BBiTV specifically asked Mr. Levinson to review the draft License Agreement for the purposes of "how do we protect our right to continue to receive our license revenue if Open[TV] is unable to perform?"   In another email dated May 30, 2006, Mr. Levinson was copied by Mr. Burr, the Orrick head of technology transactions practice, in transmitting Orrick's commentary and revisions to the draft License Agreement.

66.     Orrick's assertion that "Mr. Levinson was not and is not in possession of confidential information relating to the [License] Agreement" is therefore demonstrably false. Mr. Levinson is irrebuttably presumed to possess BBITV's confidential knowledge because of his indisputable access to such confidential information, in the Board meetings and by being sent a copy of the redlined License Agreement.

67.     Even though it presumably knew (or should have known) it had represented BBiTV in the past, Orrick has admitted that it did not attempt to implement an "ethical screen" until **after** BBiTV's attorneys contacted Orrick concerning its potential conflict of interest on October 29, 2018, well after Orrick had been substituted in as OpenTV's attorney in early September 2018.

68.     When Orrick refused to withdraw as OpenTV's counsel, BBiTV moved to disqualify Orrick.  That motion was eventually denied in the California Case based on the California court's  reading of the California professional conduct rules governing attorney disqualification. After Orrick was not disqualified, Orrick became even more aggressive in its representation of OpenTV.

### H.     Orrick Raises a Limitation of Liability Defense Against BBiTV That It Previously Failed to Advise BBiTV About When Representing BBiTV on the License Agreement

69.     On April 5, 2019, counsel for OpenTV at Orrick stated at a case management conference in the California Case that OpenTV intended to file a motion for summary adjudication on the Limitation of Liability Provision in the License Agreement.

70.     Orrick's reference to the Limitation of Liability Provision on April 5, 2019 was the first time ever that Orrick, or anyone else, had even suggested to BBiTV that the Limitation of Liability Provision might affect BBiTV's ability to collect royalties from OpenTV.

71.     On April 25, 2019, OpenTV, through its attorneys at Orrick, filed its motion for summary adjudication regarding the Limitation of Liability Provision.

72.     The Limitation of Liability Provision, which is Section 8 of the License Agreement, states, in part:

> EXCEPT PURSUANT TO AN INDEMNITY CLAIM UNDER
> SECTION 6 (INDEMNIFICATION), IN NO EVENT SHALL

18

> EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR
> ANY SPECIAL, INDIRECT OR CONSEQUENTIAL LOSS OR
> DAMAGES ARISING UNDER THIS AGREEMENT,
> INCLUDING WITHOUT LIMITATION, LOSS OF BUSINESS,
> PROFITS, REVENUES, PROGRAMMING, CONTENT
> AND/OR DATA, WHETHER ARISING FROM NEGLIGENCE,
> BREACH OF CONTRACT OR OTHERWISE.  IN NO EVENT
> WILL THE TOTAL LIABILITY OF EITHER PARTY
> HEREUNDER TO THE OTHER PARTY EXCEED, EITHER
> INDIVIDUALLY OR IN THE AGGREGATE, THE
> AGGREGATE REVENUE SHARE PAYMENTS, IF ANY,
> MADE BY OPENTV UNDER THIS AGREEMENT.

73.      OpenTV argues that the Limitation of Liability Clause means that if OpenTV paid

$0 in royalties, then that means its liability is capped at $0.  It would not matter how much in

royalties OpenTV should have paid or were past due.  It would not matter if OpenTV concealed

its activities and the amount of royalties owned, which it did.  Under OpenTV's interpretation of

the License Agreement, it has no liability to BBiTV.

74.      This interpretation of the Limitation of Liability Clause of the License Agreement

advocated by Orrick in the California Case does not turn on the definition of "License Software"

or any intellectual property issues, but concerns the ability of BBiTV to recover royalty fees

from OpenTV under any circumstances where OpenTV failed to make any aggregate revenue

share payments.

75.      It is undisputed that Orrick, in red-lining the draft License Agreement for BBiTV,

reviewed and red-lined Subsection 3.3 ("Exclusions; bundled Products") of Section 3 ("Fees") of

the License Agreement. Without doubt, Orrick would have (or should have) also reviewed the

other Fees subsections of the License Agreement, as well as other provisions of the Agreement

concerning the ability of BBiTV to collect royalty fees, such as the Limitation of Liability

Clause.

76.     That this interpretation of the Limitation of Liability Clause is being advanced by Orrick, the very attorneys who had originally reviewed and advised BBiTV on the same document in 2006, undoubtably lends it credibility in the eyes of the California court.

77.     Meanwhile, BBiTV is hamstrung in candidly discussing or relying upon the original Orrick attorneys who advised BBiTV on the Licensing Agreement (including Mr. Levinson, who is still with Orrick) to refute OpenTV's contract interpretation because they know or have been told that Orrick is representing OpenTV in the California Case.

78.     To be clear, BBiTV does not believe that OpenTV's argument based on the Limitation of Liability provision has any merit and has briefed the issue for the California court. Unfortunately, the Court in the California Case apparently disagrees with BBiTV's view that OpenTV's argument regarding the Limitation of Liability Provision is utterly meritless, and indeed, frivolous.  On August 5, 2019, the day before the hearing on the motion for summary adjudication, the Court issued a tentative ruling noting that its inclination was to grant OpenTV's motion for summary adjudication on the limitation of liability provision.

79.     After the August 6, 2019 hearing, the Court issued an order on the Motion for Summary Adjudication on August 23, 2019.  The Court continued the matter so as to allow further discovery on the motion for summary adjudication.  The Court did not change any of its legal reasoning from its prior tentative as to why it was inclined to grant the motion.  A further hearing on the motion for summary adjudication is scheduled for February 6, 2020.  There remains a very real risk that the Court will rule in favor of OpenTV.

80.     The consequence of the Court ruling in OpenTV's favor on the motion for summary adjudication would be that BBiTV would be precluded from collecting any royalties, which could amount to a loss of over $100 million.  It would also mean that Orrick gave BBiTV

very bad advice in 2006.  BBiTV will amend this complaint to bring malpractice claims against

Orrick and the individual attorneys that advised BBiTV in 2006 if OpenTV prevails on its

motion for summary adjudication on limitation of liability, as such a result for BBiTV will mean

that Orrick's advice to BBiTV in 2006 was malpractice.

<u>COUNT I</u>
**(Breach of the Duty of Loyalty)**

81.     BBiTV realleges and incorporates by reference, as if fully set forth herein, each

and every allegation of the preceding paragraphs.

82.     As former counsel for BBiTV, Orrick owed BBiTV a duty of loyalty with respect

to its representation of BBiTV.

83.     The duty of loyalty includes duties to:

a.     never place Orrick's self-interest above BBiTV's self-interest with respect to its representation of BBiTV;

b.     not profit at BBiTV's expense regarding its representation of BBiTV;

c.     avoid any position where Orrick's own interests or those of any other person whom Orrick has undertaken to represent may conflict with interests of BBiTV with respect to its representation of BBiTV;

d.     not represent another client in the same or in a substantially related matter in which that client's interest are adverse to BBiTV or where the representation of such other client would use or reveal information related to Orrick's former representation of BBiTV to BBiTV's disadvantage.

84.     In the course of Orrick's representation of BBiTV, Orrick gained knowledge of

BBiTV's confidential business information, intellectual property and trade secrets, in addition to

other information pertaining to BBiTV in the course of Orrick's representation.

85.     Orrick acted for at least a one-year period in 2005-2006 as general outside

counsel to BBiTV, advising it on a wide variety of corporate matters, including potential

transactions with OpenTV, the opposing party in the California Case, and in particular regarding the License Agreement, which is at the heart of the California Case.

86.     Orrick represented BBiTV with respect to the License Agreement, billing 8.8 hours (without considering any additional time during which Orrick was present for BBiTV's confidential Board meetings at which the License Agreement was discussed) specifically to advice regarding the License Agreement.

87.     Orrick attended at least 17 BBiTV Board meetings in the year leading up to execution of the License Agreement, including at least twelve Board meetings at which a potential deal with OpenTV was discussed, and including at least six meetings at which the License Agreement itself was discussed.  One of Orrick's attorneys who attended four of these Board meetings, Marc Levinson, **is still with Orrick**.

88.     Orrick's Brian Burr (and likely Marc Levinson) had been apprised by BBiTV of the state of the negotiations with OpenTV and the limited leverage of BBiTV at the time.  Mr. Burr delivered to BBiTV (and copying Mr. Levinson) a red-line of the draft License Agreement, including Orrick's legal advice to BBiTV which suggested adding language to the License Agreement concerning the term "Licensed Software" and language pertaining to the "Fees" section of the License Agreement.

89.     Orrick breached the duty of loyalty to BBiTV by representing OpenTV in the California Case against BBiTV where the correct interpretation of the License Agreement is squarely at issue.  BBiTV has not and will not consent to Orrick's representation of OpenTV in the California Case.  Orrick undertook the representation of OpenTV in a breach of contract case involving the very contract on which it had advised BBiTV in negotiations with OpenTV.

90.     As if that was not bad enough, Orrick has prosecuted a limitation of liability defense to the contract when it had been charged with reviewing that provision and others so as to protect BBiTV's interests.  In other words, having reviewed the License Agreement and advised BBiTV to enter into it so that BBiTV could collect royalties, Orrick turned around and took on another client, and then counseled and aided that client in using the Limitation of Liability Provision against BBiTV to harm BBiTV's interests and arguing BBiTV should be precluded from collecting royalties.  Orrick is continuing to breach its duty of loyalty to BBiTV by representing OpenTV generally on the License Agreement, and specifically by pursuing the Limitation of Liability Provision defense against BBiTV.

91.     BBiTV has suffered damages due to Orrick's disloyalty.  It has been forced to expend fees defending against Orrick's argued interpretations of the License Agreement, including the Limitation of Liability Provision, that it had not had to face prior to Orrick's disloyalty.  BBiTV suffers the risk of far greater damages and will amend this Complaint if the Court in the California Case grants OpenTV's motion for summary adjudication based on the Limitation of Liability Provision.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment against Defendants for relief as follows:

A.     General damages;

B.     Special damages;

C.     Treble damages and/or punitive damages to the extent permitted by law;

D.     An award of reasonable attorneys' fees and expenses;

E.     Pre-judgment interest;

F.     Costs of suit; and

G.   For such further and other relief as the Court may deem just and proper.

DATED: Honolulu, Hawaiʻi, February 5, 2020.

/s/ Margery S. Bronster
MARGERY S. BRONSTER
REX Y. FUJICHAKU
MATTHEW J. TERRY

Attorneys for Plaintiff
BROADBAND ITV, INC.

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAIʻI

| | |
|---|---|
| BROADBAND ITV, INC., | Civil No._____ |
| Plaintiff, | (Other Non-Vehicle Tort) |
| v. | DEMAND FOR JURY TRIAL |
| ORRICK HERRINGTON & SUTCLIFFE LLP, | |
| Defendant. | |

## DEMAND FOR JURY TRIAL

Plaintiff BROADBAND ITV, INC. hereby demands a trial by jury as to all claims or

issues so triable in this action.

DATED: Honolulu, Hawaiʻi, February 5, 2020.

/s/ Margery S. Bronster
MARGERY S. BRONSTER
REX Y. FUJICHAKU
MATTHEW J. TERRY

Attorneys for Plaintiff
BROADBAND ITV, INC.

| STATE OF HAWAI'I CIRCUIT COURT OF THE FIRST CIRCUIT | SUMMONS TO ANSWER CIVIL COMPLAINT | CASE NUMBER |
|---|---|---|

| PLAINTIFF                          VS. | DEFENDANT(S) |
|---|---|
| BROADBAND ITV, INC. | ORRICK HERRINGTON & SUTCLIFFE LLP |

PLAINTIFF'S NAME & ADDRESS, TEL. NO.

MARGERY S. BRONSTER, #4750
REX Y. FUJICHAKU, #7198
MATTHEW J. TERRY, #10361
1003 Bishop Street, Suite 2300
Honolulu, Hawai'i 96813
Telephone:  (808) 524-5644

**TO THE ABOVE-NAMED DEFENDANT(S)**

You are hereby summoned and required to file with the court and serve upon

Bronster Fujichaku Robbins at 1003 Bishop Street, Suite 2300, Pauahi, Honolulu, Hawaii 96813

_____ ,
plaintiff's attorney, whose address is stated above, an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the date of service.  If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint.

**THIS SUMMONS SHALL NOT BE PERSONALLY DELIVERED BETWEEN 10:00 P.M. AND 6:00 A.M. ON PREMISES NOT OPEN TO THE GENERAL PUBLIC, UNLESS A JUDGE OF THE ABOVE-ENTITLED COURT PERMITS, IN WRITING ON THIS SUMMONS, PERSONAL DELIVERY DURING THOSE HOURS.**

**A FAILURE TO OBEY THIS SUMMONS MAY RESULT IN AN ENTRY OF DEFAULT AND DEFAULT JUDGMENT AGAINST THE DISOBEYING PERSON OR PARTY.**

| The original document is filed in the Judiciary's electronic case management system which is accessible via eCourt Kokua at: http://www.courts.state.hi.us | Effective Date of 28-Oct-2019 Signed by: /s/ Patsy Nakamoto Clerk, 1st Circuit, State of Hawai'i  |
|---|---|

 In accordance with the Americans with Disabilities Act, and other applicable state and federal laws, if you require a reasonable accommodation for a disability, please contact the ADA Coordinator at the Circuit Court Administration Office on OAHU- Phone No. 808-539-4400, TTY 808-539-4853, FAX 539-4402, at least ten (10) working days prior to your hearing or appointment date.